In the following two cases, the act is held to be unconstitutional.

## COMMON PLEAS OF FAIRFIELD COUNTY, OHIO.

# The State of Ohio *versus* Bliss.

The act of Congress of March 3d, 1863, providing for the removal to the Circuit Court of the United States actions arising from any act done under color of the authority derived from, and executed under the President of the United States, is unconstitutional.

Van Trump, J.—This is a petition filed under and by virtue of the provisions of the act of Congress, approved March 3, 1863, entitled "An act relating to *habeas corpus* and regulating judicial proceedings in certain cases."  The questions involved are of vast and solemn importance and significance, whether looked at in behalf of the powers of the President of the United States, as sought to be established by this law, or of the rights of the citizens of the States, and the sovereign powers of the States themselves.  If this law, to the extent in which it seeks to establish the executive powers of the nation, is authorized by the Constitution of the United States, and if Congress has not exceeded the just powers granted to them by that instrument in the enactment of its provisions, then, no matter what may be the consequences to the individual citizen, or its effect upon the

[The State of Ohio *v.* Bliss.]

sovereignty of the States as integral portions of the Federal government, it is my imperative duty, from which I am not disposed to shrink, so to declare it. But if, on the other hand, I feel a judicial conviction, beyond a reasonable or disturbing doubt, that this law is not warranted by any of the provisions of the Federal Constitution, and that Congress thereby has, without such constitutional authority, sought to interfere improperly with the local criminal law of a State, it is equally my solemn duty so to declare it.

It has been said by the argument of counsel, that this court cannot look into anything in the determination of this question beyond the facts alleged in the petition, the provisions of the law of Congress upon which that petition is based, and the warrant issued by the Secretary of War ordering the arrest of Edson B. Olds, and his imprisonment in Fort Lafayette. In this narrow view of the subject I do not entirely concur with the counsel; although I acknowledge the investigation should not, and cannot, be extended much beyond these limits. To test the constitutionality of this law, and this is the main question before us, several other things are to be taken into consideration : The Constitution of the State of Ohio, the State criminal law upon our statute books under and by virtue of the Constitution of the United States, and it may be the constitutional powers of the President, so far as they are sought to be *declared* by this act of March 3, 1863.

Counsel has also said, and very truly, that the question involved in this application is simply one of *jurisdiction* between this court and the Circuit Court of the United States. The announcement is merely the statement of the legal *fact ;* but it is no solution of the constitutional *principle* required to be passed upon : because it will not, I apprehend, be denied, that as grave and direct a question of constitutional power may arise upon a question of the jurisdiction of the *forum* as upon any other proposition in the whole range of constitutional law.

Counsel for the petitioner has cited the judiciary act of 1789, as bearing upon the question now before the court by way of construction, upon the theory of some analogy supposed to exist ; but .the analogy subsisting between a law giving civil jurisdiction by virtue of the 1st and 2d sections of the 3d article of the Constitution of the United States, and that conferring criminal jurisdiction, seeking to oust the State courts of their jurisdiction over the local criminal law of a State, cannot be considered as of very great force or pertinence. The statutes alluded to, of 1815 and 1816, in relation to the public revenues, are entitled to more consideration. But what is the clear distinction arising upon the law now under consideration and these several other Federal statutes cited in the argument of counsel for the petitioner, when taken in connection with the acknowledged *facts* of the case at bar ? It is this : that in the cases under these statutes of 1815 and 1833, the *corpus delicti* complained of, and sought to be enforced in the State courts, grew out of an attempt to enforce the provisions of *a law of Congress,* by the proper officers whose official duty it was to carry those provisions into execution within the State where the conflict of jurisdiction arose, and as to which law there was no serious question as to its constitutionality, being laws for the collection of the public maritime revenues of the United States. The law of March 3, 1815, was " an act further to provide for the collection of duties on imports." The case of *Wetherbee* v. *Johnson and others,* 10 Mass. Rep. 412, cited by the counsel,. arose under the law of 1815 ; and even in that case the constitutionality of the law was brought in question ; but the court very properly held that the law was warranted by the Constitution of the United States. The defendant Johnson was inspector of customs for the district of Boston and Charlestown, and in the State court plead that fact in justification of the alleged trespass in taking and carrying away certain goods and chattels of the plain-

[The State of Ohio *v.* Bliss.]

tiff, liable to be seized under the law of Congress. Trial was had upon the issue, and judgment rendered for the plaintiff for the value of the goods thus seized. Afterwards, and at the same term, Johnson filed his claim for an appeal, under said statute, from said judgment to the Circuit Court of the United States, then next to be holden within the District of Massachusetts. PARKER, C. J., said : " Among other things referred by the Constitution of the United States to the judiciary power of the nation, are all cases in law and equity arising under the Constitution or laws of the United States. If an action be brought by a citizen of any State against another citizen of the same State, the courts of the United States have not original jurisdiction ; but the action must be brought in the State courts. But as the defendant in such suits may, *in the act complained of, have been in the execution of some* LAW *of the United States,* Congress may by law provide, that the suit shall be removed to the national courts, *when the defendant shall make it appear* that his case is a proper subject of their jurisdiction."

It will be observed that the Chief Justice puts the right of the petitioner to a transfer of jurisdiction upon the distinct ground that the *act complained of* in the original prosecution in the State court was committed by the proper officers in the execution of some LAW *of the United States.* In *such* case, the court held that Congress may by law provide, that the suit shall be removed to the Federal courts, *when the petitioner shall make it appear* that his case is a proper subject of their jurisdiction. But how is it in the case at bar ? It is very clear that the *corpus delicti* did not grow out of an attempt by a proper officer to carry into execution a *law* of the Congress of the States, not even the provisions of this act of March 3, 1863, but arose in the execution of a mere *order* of the President, authorized by no *law* of Congress, and which order came in direct conflict with the *Constitution* of the State of Ohio, and of a *law* existing in pursuance thereof. Now, what is the legal *status* of the claim made by this petitioner to remove his case into the Circuit Court of the United States ? It is, in my opinion, nothing more or less than an attempt to transfer the criminal jurisdiction of the State courts into that of the Federal tribunals. If such is the scope and effect of this act of March 3d, 1863, or if such would be the result of its proper application to facts in the case at bar, then I have no hesitation in pronouncing it unconstitutional.

Might not Congress as clearly repeal or abolish a State law creating an offence, not forbidden by the Federal Constitution, as to dictate to such State the *mode* or *place* of trial of such offence ? Would they not have the same power to measure and fix the punishment of crime under a State law, or to enact a code of evidence or practice for its prosecution, as to erect the *forum* for its trial ? It is clear to my mind that the sovereign legislative power of a State has just as *exclusive* jurisdiction over the *forum* as they have the exclusive constitutional power to declare what shall be the crime itself. And if the Congress of the United States have no constitutional power to modify, abolish, or repeal the law of a State, *creating* the crime, it is a logical deduction, in my opinion, from which there is no escape, that they are equally powerless in changing the *forum of trial* of such crimes, unless the wrongful act charged grows out of the execution of, or is connected at the time with some LAW of the United States. In such case, there exists a concurrent jurisdiction over the subject, and of the two, the inferior must yield to the superior jurisdiction, upon a question of undisputed sovereignty, and where a demand is made for the transfer of the jurisdiction. Such were the cases which arose under the acts of Congress of 1815 and 1833. The alleged wrongful acts done were committed under and by virtue of the *authority* of those laws. Whether the acts done by the inspectors and collectors of the customs were trespasses or not, depended upon the *validity* of the laws which they were in the act of executing. It was when such a state of things as this occurred, that Congress

[The State of Ohio *v.* Bliss.]

declared, in and by those statutes, that the defendants should have the right to a transfer of the cases brought against them in the State courts, to a *paramount* jurisdiction.

I cannot perceive that the case of *Worcester* v. *The State of Georgia,* 5 Peters' Rep. 515, has any application to the question raised upon this petition in the case at bar. That was a case where a State law, by the legislature of Georgia, was in clear violation of treaties made between the United States and the Cherokee nation of Indians, in which they were recognized as a *sovereign and independent nation,* and in which the United States guaranteed that the Cherokees should be authorized to govern themselves, and all persons who had settled within their territory, free from any right of legislative interference by the several States composing the United States, in reference to acts done within their own territory. The State of Georgia, therefore, had no more power to pass a criminal law to operate in the territory thus recognized by the sovereignty of the United States, than they had to pass a law to operate in the territory of her sister States.

It is by no means clear to my mind that this law now under consideration covers or includes the case at bar. It certainly does not use very apt or precise language to reach it: Counsel for the State alluded to certain proposed and rejected amendments to the law, to show the *motives* operating upon the legislative mind in its passage. Courts, in the interpretation of laws, cannot look into or scan the motives which induced their enactment, unless they lead to a proper sustainment of the law itself. I think the true interpretation, according to the legal canons of construction to be put upon the word " authority," as used in the 5th sections of this act, is a proper legal and *constitutional* authority. It is not to be presumed, judicially at least, that the legislature intended so startling a proposition as to make the mere *private will* of the President, the simple volition of the *individual,* a law by which the liberty of the citizen is to be regulated and controlled, in despite of the clear and explicit guarantees of the Constitution in that behalf.

If this is a proper interpretation of this law, then it is clear to my apprehension that the case at bar does not fall within its provisions. Some doubts might also be entertained as to whether the retroactive provisions of this law, so far as it applies to criminal prosecutions, are to be sustained as valid and obligatory. To that extent it is an *ex post facto* law ; and if sought to be applied to or against the petitioner, would likely be pronounced unconstitutional and void. Whether this is a proposition of *mutual* right, as between the State and the petitioner, is a point never raised or decided within my recollection. There is another most remarkable want of mutuality in this law, even in cases of civil jurisdiction as between individuals, that, in my opinion, makes it void. In a civil suit between A and B, for damages, B, at any time after entering his *appearance* to the action, upon filing his petition in the State court, stating that in the act complained of he acted under color of authority derived from the President, may have the case transferred to the Circuit Court of the United States ; and yet A has no such right under this law until after judgment shall have been rendered in the action pending in the State court. But apart from these questions of doubt, what are the facts and legal questions in the case at bar, which render this law unconstitutional, if intended to be applied to such a case ? The plain statement of the question is this : The Constitution of the State of Ohio provides that " no person shall be transported out of the State for any offence committed within the same." A law of the State makes it a crime to " kidnap, or forcibly or fraudulently carry off or decoy out of this State any white person or persons."

This provision in our State Constitution, and this statute in pursuance thereof, is the *supreme law* of the case at bar, and of the present motion of the petitioner, unless there is some provision in the Constitution of the

[George W. Jones v. William H. Seward.]

United States which overcomes and subordinates the State Constitution *upon the very question of the forcible or fraudulent deportation* of a citizen from one State into another. A careful examination of the provisions of the National Constitution satisfies my mind there is no such antagonism: on the contrary, the two constitutions are in clear and express harmony with each other upon this subject. If this is so, then the order of the President, under date of August 2, 1862, for the forcible transportation of Olds into the State of New York was unconstitutional, and therefore utterly null and void, and the petitioner at the bar can claim no protection under it. If I am right in this construction of the National and State Constitutions, *in pari materia*, then it also follows, as an inevitable conclusion, that this law of Congress of March 3 is also unconstitutional. These are the conclusions I have come to in the few hours I have had to look into the question. If I have erred in these conclusions I shall deeply regret it; but that regret will be modified by the fact that the petitioner has a sure and speedy remedy to set aside my decision if it be wrong, and be restored to all his rights.

The prayer of the petition is refused, and the motion overruled.